1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

DIANE L. NIXON,

CASE NO. 07CV1234 BTM (CAB)

12

Plaintiff,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY

13

vs.

JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION

14

MICHAEL J. ASTRUE,

FOR SUMMARY JUDGMENT

15

Defendant.

16
17
18
19
20
21
22
23
24

Plaintiff Diane L. Nixon alleges that she became disabled as of February 25, 2005 due to musculoskeletal impairments. (Tr.67)  Plaintiff's application for Disability Insurance Benefits under the Social Security Act ("Act") was denied initially and on reconsideration. (Tr. 20-30)  Plaintiff filed a request for hearing and testified at the hearing on March 9, 2006. (Tr. 31-34; 324-333)  The Administrative Law Judge ("ALJ") denied benefits in a decision dated November 22, 2006, concluding that Plaintiff was not disabled within the meaning of the Act. (Tr. 17)  The decision of the Social Security Administration became final when the Appeals Council denied Plaintiff's request for review.  (Tr. 4-6)  Plaintiff then commenced this action, seeking judicial review under 42 U.S.C. § 405(g).

25
26
27
28

Plaintiff has filed a motion for summary judgment and Defendant has filed a cross-motion for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion is DENIED, and the case is remanded to the ALJ for a determination of the disability onset date and a calculation of

benefits.

## FACTUAL BACKGROUND

Plaintiff was born on August 23, 1949 (Tr. 76) and has a high school education. (Tr. 88) Plaintiff previously performed work as an administrative assistant and manager for a food broker (Tr. 68) Plaintiff last worked on February 25, 2005. (Tr. 68)

Plaintiff has a long history of musculoskeletal impairments. In 1996, Plaintiff had neck fusion surgery. (Tr. 325) Since October 22, 1998, she has been a patient of Dr. Tasto, an orthopedist, for continuing musculoskeletal problems causing pain in her right shoulder. (Tr. 324-325) In 2001, Plaintiff underwent surgery to relieve her right shoulder pain caused by a large calcific tendinitis. (Tr. 250-253) Plaintiff's surgery was successful and for a few years she was able to return to most of her normal activities. (Tr. 156-57) In September 2004, however, she again sought treatment from Dr. Tasto for increasing right shoulder pain. (Tr. 143)

A CT scan taken on December 8, 2004 revealed an anomalous bony growth protruding from Plaintiff's scapula. (Tr. 131) On December 13, 2004, Dr. Tasto, in concurrence with the radiologist, opined that this may be the cause of Plaintiff's pain but noted that surgery would be a significant procedure. (Tr. 130,131) He, therefore, recommended that surgery should only be undertaken if there are no other alternatives and Plaintiff finds the pain unacceptable. (Id.) Instead, Dr. Tasto recommended treatment through a TENS unit and physical therapy. (Tr. 130) On January 24, 2005, Plaintiff noted during a visit with Dr. Tasto that her pain was significantly decreased with the use of the TENS unit. (Tr. 278) Dr. Tasto prescribed further therapy for continued use of the TENS unit and advised purchasing the TENS unit for chronic use. (Tr. 278) It appears from the record that Plaintiff purchased the TENS unit (Tr. 207) but it is unclear whether the unit continued to be effective.

Plaintiff ceased working on February 25, 2005 alleging that she could no longer sit at her computer and perform her required duties due to her level of pain. (Tr. 67-68) On June 2, 2005, Plaintiff again visited Dr. Tasto for the increased right shoulder pain which had

07CV1234

1  caused her to stop working. (Tr. 275-76) She informed Dr. Tasto during this visit that she no
2  longer could afford insurance. (Id.)  Dr. Tasto again evaluated Plaintiff and noted that she
3  continues to have crepitus in the shoulder although her range of motion is normal.  (Tr. 275)
4  Dr. Tasto also noted that Plaintiff is symptomatic but not enough to recommend surgery "as
5  there is no guarantee that this would alleviate her symptoms." (Tr. 275) He  further noted that
6  Plaintiff "has chosen to live with the crepitus and the discomfort unless it gets to the point
7  where she cannot function with it." (Id.)

8      On March 1, 2006, Dr. Tasto again treated Plaintiff for continuing shoulder pain and
9  prescribed a Lidoderm patch for pain relief. (Tr. 273) It appears that Plaintiff complained of
10 low back pain when sitting during this visit but Dr. Tasto did not treat her or make any
11 findings regarding these symptoms . (Tr. 273, 280)  Dr. Tasto treated Plaintiff again on April
12 5, 2006. (Tr. 271)  He noted that Plaintiff had significant crepitus in the right shoulder, full
13 range of motion of the shoulder and no pain at rest. (Id.) Dr. Tasto noted that the Lidoderm
14 patches have not helped and therefore prescribed Darvocet for Plaintiff.  He also discussed
15 acupuncture options with her. (Id.)

16     On October 19, 2006, Dr. Tasto performed a complete physical capacities evaluation
17 on Plaintiff indicating the following.   Plaintiff was capable of (1) sitting one hour at a time; (2)
18 standing or walking two hours at a time; (3) sitting, standing, and walking two hours each in
19 an eight hour work day. (Tr. 316-317)  He found Plaintiff capable of using her right upper
20 extremity for fine manipulative activities on a  frequent basis, and her left upper extremity on
21 a constant basis.  (Tr. 317)  He found Plaintiff capable of using her right upper extremity on
22 an occasional basis for gross manipulative activity.  (Id.)  He found Plaintiff incapable of any
23 repetitive pushing and pulling with the right upper extremity. (Tr. 316-17)  On the first page
24 of the evaluation, Dr. Tasto indicated that plaintiff could lift up to ten pounds occasionally.
25 When asked to specify the weight that Plaintiff could lift per arm, he specified that Plaintiff
26 could lift up to ten pounds with her right arm and forty pounds with her left arm.  (Id.) At this
27 time, Dr. Tasto indicated that her diagnosis was chronic impingement syndrome of the right
28 shoulder and chronic low back pain with scoliosis.  (Tr. 317)

07CV1234

1    Plaintiff testified at the ALJ hearing that she has constant pain in her right shoulder
2  radiating down to her elbow which increases with activity.  (Tr. 325, 327)  She testified she
3  takes Darvocet and uses Lidocaine patches for the pain. (Tr. 326)  Plaintiff also testified that
4  she has low back pain due to scoliosis. (Tr. 327)  Plaintiff, who is right-handed, also  testified
5  that she has difficulty using her right hand. (Tr.  329). She cannot repetitively lift items or do
6  any amount of typing. (Tr. 329).  As to her daily activities, Plaintiff testified she can take care
7  of her own hygiene and prepare her own meals.  She said she can do dishes and laundry if
8  she carries items of clothing separately. (Tr. 331) She cannot vacuum, mop, dust, or scrub
9  and only drives approximately every ten days to go to the bank or grocery store. (Id.) For
10  social activities, Plaintiff testified that she goes to the VFW hall with her husband to drink and
11  socialize. (Tr. 332)

12    Allan Cummings, the vocational expert, testified that  a person capable of light work,
13  precluded from work involving ropes, ladders, or scaffolds, and incapable of overhead work
14  with the right upper extremity could perform Plaintiff's past work.  (Tr. 333)  Dr. Cummings
15  was then asked to consider the limitations found in the assessment of Dr. Tasto, Plaintiff's
16  treating physician.  Dr. Cummings  testified an individual with the limitations specified by Dr.
17  Tasto cannot engage in  full time work and cannot perform Plaintiff's past work.   (Tr. 335).

18    The ALJ decided that Plaintiff has severe impairments of chronic impingement
19  syndrome in the  right shoulder and chronic low back pain with scoliosis but that Plaintiff's
20  impairments do not meet or equal a listing.  The ALJ rejected the opinion of Dr. Tasto,
21  Plaintiff's treating physician, and found that Plaintiff has the residual functional capacity to
22  do light work with no overhead work with upper extremities.  He concluded that Plaintiff had
23  the ability to perform her past work and, thus, was not disabled.

24
25                                 **STANDARD OF REVIEW**

26    The Commissioner's denial of benefits may be set aside if it is not supported by
27  substantial evidence or is based on legal error. Green v. Heckler, 803 F.2d 528, 529
28  (9th Cir. 1986). Substantial evidence is more than a scintilla, but less than a

4

preponderance. <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> To determine whether substantial evidence supports the decision, a district court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the decision. <u>Id.</u> The court must uphold the decision if the evidence can reasonably support either affirming or reversing the ALJ's conclusion.  <u>Id.</u> at 720-21.

To qualify for disability benefits, the claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity, and the impairment is expected to result in death or has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); <u>Reddick,</u> 157 F.3d at 721. The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); <u>Reddick</u>, 157 F.3d at 721. If the claimant establishes that she is unable to do her prior work, the burden shifts to the defendant to show that the claimant can perform other substantial gainful work that exists in the national economy. <u>Reddick</u>, 157 F.3d at 721.

The determination of whether a claimant is disabled is governed by a five-step process as follows: (1) Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Does the claimant have a "severe" impairment? If so, the evaluation proceeds to step three. If not, the claimant is not disabled. (3) Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, the evaluation proceeds to step four.  (4) Is the claimant capable of performing past work? If so, the claimant is not disabled. If not, the evaluation proceeds to step five.  (5) Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520; <u>see also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

07CV1234

1

2                                           **DISCUSSION**

3          Plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr.

4   Tasto.  If a treating physician's opinion is "well-supported by medically acceptable clinical and

5   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence"

6   in the record, it must be accorded controlling weight.  20 C.F.R. § 404.1527(d)(2). Even if a

7   treating physician's opinion is not given "controlling weight,"  the ALJ must consider specified

8   factors such as the length of the treatment relationship and the nature and extent of the

9   treatment relationship in determining the weight to be accorded to the opinion offered. Id. §

10  404.1527(d)(2)(i)-(ii).  "[T]he ALJ may not reject the opinion of a treating physician without

11  providing "specific and legitimate reasons" supported by substantial evidence in the record..

12  . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations

13  and explain why they, rather than the doctors', are correct." <u>Orn v. Astrue</u>, 495 F.3d 625, 632

14  (9th Cir. 2007).

15         The ALJ specified the following reasons for rejecting the treating physician's opinion

16  and instead accepting the opinion of the State Agency's medical consultants.  First, the ALJ

17  found that the doctor's opinion regarding Plaintiff's manipulative limitations is not supported

18  by clinical signs, findings or treating records.  Based on her condition of chronic impingement

19  syndrome in the right shoulder, Dr. Tasto opined that Plaintiff could only occasionally use her

20  right arm for gross manipulative activity and never use her right arm for pushing and pulling.

21  (TR. 317)  The ALJ does not explain how these findings are unsupported by the clinical

22  findings and Plaintiff's medical records.  Plaintiff's  medical records clearly indicate an

23  anomalous bony growth that likely causes Plaintiff's pain from movement and use of her right

24  arm. (Tr. 131)  Plaintiff's treating records also demonstrate some difficulty in controlling

25  Plaintiff's pain levels. (Tr. 271)  Without more explanation, the Court does not agree that Dr.

26  Tasto's opinion regarding the manipulative limitations of Plaintiff's right arm is unsupported

27  by the record.

28         Second, the ALJ points to the inconsistencies in the assessment provided by Dr.

07CV1234

Tasto.  Specifically, the ALJ notes that Dr. Tasto states that Plaintiff can lift only 10 pounds on the first page of her assessment but on the next page states that she can lift 10 pounds with her right arm and 40 pounds with her left arm. (Tr. 316-317)   The Court finds that this inconsistency, contained within the same document, is most likely the result of a misunderstanding of the questions presented in the assessment. The question on the first page asks the amount of weight Plaintiff can lift generally whereas the question on the second page asks for the amount of weight Plaintiff can lift in each specific arm. In answering the first question, Dr. Tasto may have thought that he was being asked the weight limitation of the weaker arm.  The Court concludes that this type of clerical inconsistency, as opposed to inconsistencies in diagnoses, medical findings or treatment, does not reduce the credibility of the treating physician.

Third, the ALJ notes that Plaintiff's testimony regarding her daily activities is inconsistent with the level of alleged disabling limitations set forth by Dr. Tasto.   Plaintiff testified that she can take care of her own hygiene and prepare her own meals.  Plaintiff also testified that she can do dishes and laundry if she makes several trips to carry clothes separately.  Plaintiff drives a car once every ten days to the grocery store and bank. (Tr. 332) She also goes to the VFW hall  with her husband to socialize about twice a week.  (Tr. 332) The ALJ does not explain how these activities are inconsistent with Dr. Tasto's opinion of her limitations when none of the above necessarily involves sitting, standing or walking continuously for more than one or two hours; more than occasional gross manipulation using the right arm; repetitive pushing or pulling with the right arm; or any other limitation assessed by Dr. Tasto.  Performing her own grocery shopping is the only activity that may possibly be inconsistent with Dr. Tasto's assessment of her limitations depending on the weight of the items she was purchasing and whether she lifted and carried the bags by herself.  Her testimony however did not deal with the specific requirements of the type of grocery shopping that she performed.  Upon the present state of the record, therefore, the Court concludes that substantial evidence does not support the proposition that Plaintiff's daily activities are inconsistent with Dr. Tasto's assessment of her limitations.

07CV1234

At the time of the ALJ's decision, Dr. Tasto had treated Plaintiff for eight years and performed surgery on her in 2001. Given his long treatment relationship with Plaintiff and the opportunities that relationship afforded to assess Plaintiff's general condition and limitations, the Court concludes that the ALJ erred in rejecting Dr. Tasto's opinions for the reasons stated above. The ALJ relied on the opinions of two medical physicians who examined Plaintiff's records and concluded that Plaintiff was capable of light work. (Tr. 264-267) However, the Court notes that these physicians specialized in the fields of ophthalmology and neurosurgery and were giving opinions outside their field of expertise. (Tr. 268) The ALJ's reasons as stated above for rejecting Dr. Tasto's opinions are not specific and legitimate reasons supported by substantial evidence.

The ALJ does validly point out that Dr. Tasto's finding that Plaintiff is limited to less than full time work is not supported by the record. Dr. Tasto opined that Plaintiff could only sit for a total of two hours, stand for two hours and walk for two hours in an eight hour day, effectively limiting her to less than full-time work. This opinion could possibly be supported by the diagnosis of chronic "lumbar strain secondary to degenerative disc disease" dated October 1999 (Tr.174-176) and an August 18, 2004 MRI which shows that Plaintiff suffers from mild scoliosis in the lumbar region. (Tr. 246) The Court notes that although Dr. Tasto's opinions on Plaintiff's ability to sit, stand and walk *may* be supported by the above evidence, the specific reasons for Dr. Tasto's opinion as to her sitting, standing and walking limitations are unclear. Dr. Tasto does not seem to have treated Plaintiff's lower back pain or made any specific findings relating her lower back condition to her sitting, standing and walking limitations. Where a doctor's opinion and medical support for an opinion is unclear, as in this case, the Court would normally remand to supplement the record.

In this case, however, the Court concludes that there are alternate grounds upon which to base an award of benefits. Even without any sitting, standing and walking limitations, it appears that Plaintiff would be entitled to a determination of disability benefits if Dr. Tasto's opinion about her manipulative limitations is credited. The vocational expert testified at the hearing that if Dr. Tasto's opinion that Plaintiff is limited to occasional gross

1  manipulation with her right hand were credited, Plaintiff could not perform her past work. (Tr.

2  333-334) Given her advanced age of 57 and lack of transferable skills, the vocational expert

3  concluded that Plaintiff would "grid out" as disabled. See 20 C.F.R. Pt. 404, Subpt. P, App.

4  2, Rule 202.06. As set forth above, the Court concluded that Dr. Tasto's opinion on

5  Plaintiff's manipulative limitations should be credited. Because Plaintiff's manipulative

6  limitations dictates a grid finding of disabled, the Court need not remand for further

7  determination on Plaintiff's standing, sitting and walking limitations.

8      The Court notes that it is unclear from the present state of the record as to when

9  Plaintiff became disabled. Although Plaintiff claims she was disabled as of February 25,

10  2005, Dr. Tasto's assessment of her which establishes her disability did not take place until

11  October 19, 2006. The Court therefore GRANTS Plaintiff's motion for summary judgment,

12  DENIES Defendant's motion for summary judgment, and remands this case to the ALJ for

13  a determination of the disability onset date and a calculation of benefits. The Clerk shall

14  enter judgment accordingly.

15  IT IS SO ORDERED.

16

17  DATED: July 3, 2008

18

19  _____
   Honorable Barry Ted Moskowitz
20  United States District Judge

21

22

23

24

25

26

27

28

9

07CV1234